### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10553 (CTG) |
| Debtors. | (Jointly Administered) |
| ALFRED T. GIULIANO, in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, *et al.*,  Plaintiff,  vs.  BUTLER COLOR PRESS INC.,  Defendant. | Adv. Proc. No. 22-50182 (CTG)  **Re: Docket No. 20** |
| GATHERCRAFT LLC,  Defendant. | Adv. Proc. No. 22-50191 (CTG)  **Re: Docket No. 22** |
| MULTI-SERVICE TECHNOLOGY SOLUTIONS, INC. f/k/a MSTS PAYMENTS, LLC d/b/a BEST BUY BUSINESS ADVANTAGE,  Defendant. | Adv. Proc. No. 22-50203 (CTG)  **Re: Docket No. 19** |
| PCMG, INC.,  Defendant. | Adv. Proc. No. 22-50206 (CTG)  **Re: Docket No. 22** |

### ORDER GRANTING SEVENTH OMNIBUS MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, TO APPROVE SETTLEMENT AGREEMENTS

Upon consideration of the *Seventh Omnibus Motion of Alfred T. Giuliano,*

*Chapter 7 Trustee, to Approve Settlement Agreements* (the "Motion")[2] of Alfred T. Giuliano,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion.

chapter 7 trustee (the "Trustee") to the estates of the above-captioned debtors (the "Debtors"),

for entry of an order (this "Order"), pursuant to sections 105(a) and 363(b) of the Bankruptcy

Code and Bankruptcy Rule 9019, to approve the settlement agreements (the "Settlement

Agreements") between the Trustee and (a) BUTLER COLOR PRESS INC., (b)

GATHERCRAFT LLC, (c) MULTI-SERVICE TECHNOLOGY SOLUTIONS, INC. f/k/a

MSTS PAYMENTS, LLC d/b/a BEST BUY BUSINESS ADVANTAGE and (d) PCMG, INC.

(the above collectively referred to herein as the "Defendants"); copies of Settlement Agreements

are attached hereto as Exhibits 1 through 4; the Court having reviewed the Motion and the

Settlement Agreements and having considered the record with respect to the Motion; the Court

having found that (a) the district court has jurisdiction under 28 U.S.C. § 1334, which was

referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of*

*Reference from the United States District Court for the District of Delaware*, dated February 29,

2012, and that this Court may enter a final order consistent with Article III of the United States

Constitution**,** (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the

Motion was sufficient under the circumstances and in full compliance with Bankruptcy Rule

2002 and the local rules of this Court, (d) the Settlement Agreements (i) are the product of good

faith, arms' length negotiations among the Parties, without collusion, (ii) are fair, reasonable,

appropriate and in the best interests of the Debtors' estates and (iii) represent a sound exercise of

the Trustee's business judgment and (e) each of the Parties to the Settlement Agreements

provided sufficient consideration for the transactions contemplated by the Settlement

Agreements; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The terms of the Settlement Agreements attached hereto as <u>Exhibits 1 through 4</u> are APPROVED in their entirety pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

3.      The Parties are hereby authorized to take such additional actions or execute such additional documents as are necessary or appropriate to implement the terms of the Settlement Agreements.

4.      Notwithstanding the possible applicability of Rules 6004, 7062, or 9014 of the Bankruptcy Rules, any other Bankruptcy Rule, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of effectiveness or execution of this Order.

5.      The Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, or enforcement of the Settlement Agreements or this Order.

**Dated: February 15th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>EXHIBIT 1</u>**

**BUTLER**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Butler Color Press Inc. ("Butler" or the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of

the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the

Company disputes; and

WHEREAS, on February 28, 2022, the Trustee filed a *COMPLAINT FOR*

*AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C.*

*§§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware,

assigned Adversary Case Number 22-50182 (the "Adversary Action"). The Parties have engaged

in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by

reference.

2.    **Settlement Amount.** Company shall pay to the Trustee the sum of Fifteen

Thousand Dollars (US $15,000.00) (the "Settlement Payment") ten (10) days following

Bankruptcy Court approval of the settlement agreement between the parties, pursuant to Rule

9019 of the Federal Rules of Bankruptcy Procedure; via the following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

Or if by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as
addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica
Blvd, Suite 1300, Los Angeles, CA 90067.

DOCS_LA:346755.1 05233/004

3.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

6.    **Company's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their

3

bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, provided, however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim.

7.    **Bankruptcy Court Approval.** Within ~~seven~~ (~~7~~) Fourteen 14 days of the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. All deadlines in this Adversary Proceeding are indefinitely adjourned while Bankruptcy Court approval of this Settlement Agreement is pending. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

8.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

4

9.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Adversary Action, the 90 Day Transfers and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

10.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) to assert the release and/or satisfaction of any claims or causes of action released and/or satisfied under this Settlement Agreement.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things

5

reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

6

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

7

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: January 4th, 2023

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Art Van Furniture, LLC, et al, which includes Wolf Furniture, a division of Levin Furniture

By: _____
      Alfred T. Giuliano, Trustee

Dated: January __, 2023

BUTLER COLOR PRESS INC.

By: _____
Name: RONALD A. VODENICHAR
Title: PRESIDENT

8

## **EXHIBIT 2**

## **GATHERCRAFT**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and GATHERCRAFT LLC ("Gathercraft" or the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 1, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50191 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.  **Recitals.** The recitals set forth above are incorporated herein by reference.

2.  **Settlement Amount**. Company shall pay to the Trustee the sum of Ninety Thousand Dollars (US $90,000.00) (the "Settlement Payment"): in accordance with the following timetable: The initial installment of the Settlement Payment will be made by Gathercraft in the amount of Fifty Thousand Dollars ($50,000) (the "Initial Installment"), to the Trustee within 5 days of a final order of the Bankruptcy Court approving the settlement between the parties, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion"), provided that this Initial Installment is not due to be paid sooner than 60 days from December 20, 2022, regardless of when the an order approving the 9019 Motion is entered;

3.  The second installment in the amount of Ten Thousand Dollars ($10,000) will be made by Gathercraft within 30 days following the Initial Installment; the third installment in the amount of Ten Thousand Dollars ($10,000) will be made by Gathercraft within 60 days

2

following the Initial Installment; the fourth installment in the amount of Ten Thousand Dollars

($10,000) will be made by Gathercraft within 90 days of the Initial Installment; and the fifth and

final installment in the amount of Ten Thousand Dollars ($10,000) will be made by Gathercraft

within 120 days following the Initial Installment via the following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to
Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite
1300, Los Angeles, CA 90067.

4.    **Settlement Effective Date.**  The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the

Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement

Agreement (the "Settlement Effective Date").

5.    **Dismissal of Litigation.**  Within ten (10) business days after the

Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary

to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own

costs relating to the Adversary Proceeding, including attorneys' fees.

6.    **Trustee's Limited Release.**  Effective on the Settlement Effective Date,

the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or

other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and

forever waived, released, acquitted and discharged Company, its directors, employees, officers

and the successors and assigns of any of them (collectively, the "Defendant Releasees") from

3

any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

       7.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, provided, however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim.

       8.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court

4

enters an order of approval, this Agreement shall have no binding effect. In the event an order

approving this Agreement does not become final, each of the Parties shall not be prejudiced but

returned to their position status quo ante.

        9.    **No Admissions.** This Settlement Agreement is not and shall not in any

way be construed as an admission by the Parties of any allegations made in connection with the

90 Day Transfers.

        10.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys'

fees incurred to date in connection with the Adversary Action, the 90 Day Transfers and this

Settlement Agreement. In the event of any dispute in connection with the enforcement of this

Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees,

costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved

or non-approved costs, incurred in connection with such action or proceeding, as determined by

the Court.

        11.    **Severability.** The Parties agree that if any provision of this Settlement

Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this

Settlement Agreement that is illegal, invalid, or unenforceable.

        12.    **Miscellaneous.**

        (a)    Neither this Settlement Agreement, nor any statement made or

action taken in connection with the negotiation of this Settlement Agreement, shall be offered or

received in evidence or in any way referred to in any legal action or administrative proceeding

among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and

5

to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) to assert the release and/or satisfaction of any claims or causes of action released and/or satisfied under this Settlement Agreement.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the

6

Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

7

   (k) This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

   (l) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

   (m) The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

   (n) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.


   IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated:  January 18, 2023

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Art Van Furniture, LLC. et al.
which includes Wolf Furniture, a division of Levin
Furniture

By: _____
   Alfred T. Giuliano, Trustee

Dated:  January 18, 2023

GATHERCRAFT LLC


By: _____
Name: JOHN MARK HUDSON
Title: PRESIDENT, OWNER

8

## **EXHIBIT 3**

**MSTS**

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and MULTI SERVICE TECHNOLOGY SOLUTIONS, INC. D/B/A TREVIPAY (the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on June 12, 2020, Company filed a proof of claim against Debtor Sam Levin, Inc., designated Claim number 720, in the amount of $228,896.58 (the "Filed Claim"); and

WHEREAS, on March 2, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50203 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount**. Within ten (10) days after Court approval of this Settlement Agreement, Company shall pay to the Trustee the sum of Thirty Eight Thousand Five Hundred Dollars (US $38,500.00) (the "Settlement Payment"): in accordance with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |

2

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

Swift #:    TRTTUS33
Acct #:    8100010308
Acct Name:  Sam Levin, Inc.

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

3.      **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.      **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

5.      **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have

3

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

6.      **Company's Limited Release.**   Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, provided, however, that the Company does not waive any rights with respect to its Filed Claim, nor the filing of a § 502(h) claim.

7.      **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

4

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

8.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

9.    **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Adversary Action, the 90 Day Transfers and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

10.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) to assert the release and/or

DOCS_LA:346523.1 05233/004

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

satisfaction of any claims or causes of action released and/or satisfied under this Settlement Agreement.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or

6

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

7

DocuSign Envelope ID: 4CD9907B-1F81-4B4B-9811-77E00E245C9A

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _12/27/22_

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Art Van Furniture, LLC, et al, which includes Wolf Furniture, a division of Levin Furniture

By:_____
Alfred T. Giuliano, Trustee

Dated:  December 22, 2022

MULTI-SERVICE TECHNOLOGY SOLUTIONS, INC. D/B/A TREVIPAY

By:_____
DocuSigned by:
kauleen Adiutori
DDE7D223343043A
Name: Kauleen Adiutori
Title:  Chief Operations Officer

DOCS_LA:346523.1 05233/004

**<u>EXHIBIT 4</u>**

**PCMG**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and PCMG, INC., a Delaware corporation (the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received a payment from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfer"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 2, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50206 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and has disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.**  The recitals set forth above are incorporated herein by reference.

1.    **Settlement Amount**. Within 10 days of Bankruptcy Court approval of this Settlement Agreement, Company shall pay to the Trustee the sum of Eighty Five Thousand Dollars (US $85,000.00) (the "Settlement Payment").  The Settlement Payment will be made in accordance with following wire instructions:

```
Bank:        TriState Capital Bank
             301 Grant Street, Suite 2700
             Pittsburgh, PA 15219
ABA #:       043019003
Swift #:     TRTTUS33
Acct #:      8100010712
Acct Name:   Art Van Furniture, LLC
```

DOCS_LA:346282.2 05233/003

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

2.      **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

3.      **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

4.      **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfer and/or the Adversary Action.

3

5.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees, provided however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim.

6.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

7.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfer.

4

8.    **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfer, the Waived Claim and this Settlement Agreement.

9.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

5

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.  Notwithstanding the foregoing, any proof of claim filed pursuant to Section 502(h) of the Bankruptcy Code shall be deemed timely if filed within 15 days of the Settlement Effective Date.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented

6

to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

        (i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

        (j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

        (k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

        (l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

        (m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____, 2023

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, et al

By: _____
        Alfred T. Giuliano, Trustee

Dated: <u>January 11</u>, 2023

PCMG, INC.

By: _____
Name: Sharon O. Ennis_____
Title: _Secretary_____

DOCS_LA:346282.2 05233/003